## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Diego Roman-Rivera | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| Utility Services Group, Inc. | ) |
| | ) |
| Defendant. | ) JURY TRIAL DEMANDED |

_____

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Diego Roman-Rivera, (hereinafter, Plaintiff) complains of Defendant Utility Services Group, Inc ("USG" or "Defendant") as follows.

### NATURE OF THE CASE

1. This is an employment discrimination case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.,* as amended ("Title VII"); the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

2. Plaintiff alleges that USG has engaged in, and continues to engage in, a pattern and practice of employment discrimination, harassment and retaliation, intentional and systemic, on the basis of his race, color and/or national origin and due to his association with his child's disability as more fully alleged below.

1

3. USG's discriminatory practices include, but are not limited to, discrimination in job assignment, job scheduling and termination as alleged in this Complaint; failure to correct the racist behavior of co-workers and supervisors, promoting an environment of racial intimidation and failing to act to protect him from persistent racial intimidation.

4. Plaintiff seeks injunctive and equitable monetary relief from these practices; compensatory and punitive damages; and an award of costs, expenses, and attorneys' fees for himself.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction of Plaintiff's Section 1981 claims pursuant to 28 U.S.C. §§1331 and 1343. The Court also has original jurisdiction of Plaintiff's Title VII claims pursuant to those two provisions as well as 42 U.S.C. §2000e-5(f)(3). This Court also has original jurisdiction under the ADA.

6. This Court has supplemental jurisdiction of Plaintiff's PHRA claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(c) and 42 U.S.C. §2000-5(f) (3). USG is subject to personal jurisdiction in this District in that it maintains facilities and business operations in this District, employed Plaintiff in this District and committed the discriminatory acts alleged herein in this District.

**PARTIES**

8.  Plaintiff is an adult citizen of the Commonwealth of Pennsylvania who resides in Camp Hill, Pennsylvania.

9.  Plaintiff is a Hispanic male and is a member of a class of individuals protected against discrimination, harassment and/or retaliation on account of race/color/national origin.

10. Defendant USG is a company that specializes in Underground Infrastructure Inspection, Maintenance and Trenchless Repair with a principal place of business located at: 1304 Slate Hill Road Camp Hill, Pennsylvania 17011

11. Plaintiff's son, has an asthmatic condition requiring treatment. His son's condition is a disability, he is regarded as having a disability and has a record of having Asthma. Plaintiff is accordingly protected from discrimination on the basis of his association with his son's disability.

12. Plaintiff has complied with all administrative prerequisites to an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a); the ADA; and the PHRA.

13. Specifically, Plaintiff timely filed a formal complaint of discrimination with the Equal Employment Opportunity Commission [hereinafter referred to as EEOC] which was dual filed with the Pennsylvania Human Relations Commission [hereinafter referred to as PHRC] and such actions was docketed as 530-2019-03749 (see Plaintiff's Exhibit A).

14. Plaintiff promptly and diligently accommodated all EEOC requests for information and fully cooperated in the agency's investigation of this matter.

15. Plaintiff has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action and the Plaintiff received a right to sue letter as noted and attached above.

16. No administrative prerequisites are required before a Plaintiff files a complaint pursuant to 42 U.S.C. Section 1981.

## FACTUAL ALLEGATIONS

17. USG's employment practices and systems discriminated against Plaintiff because of his race/color/national origin.

18. The discriminatory practices engaged in by USG are intentional and systemic in nature and adversely affected the Plaintiff with respect to opportunities for promotion, transfer, job assignment, compensation, and termination and other terms and conditions of employment, as specifically summarized below.

19. On or about March 1, 2019, Plaintiff was given notice that USG was laying him off effective immediately, due to seasonal conditions and lack of available work.

20. On or about March 3, 2019, Plaintiff noticed that another co-worker, Joe Long, whom had also been laid off, was called back to work. Mr. Long was a Caucasian laborer whom only had 8 months experience.

21. Plaintiff had 4.5 years of experience with USG.

22. Further, Plaintiff was told by a co-worker, Andrew Jones, that Superintendent, David Jones referred to him as a "nigger."

23. Further, Plaintiff used accrued Paid Time Off to care for his child whom has a disability "Asthma."

24. Plaintiff was thereafter chastised for taking time off to care for his son.

25. Plaintiff believes he was being harassed because of his race/color/national origin.

26. Plaintiff complained of these incidents of discrimination to his supervisors including, but not limited to, Mr. Jones and upper level management including but not limited to William Frieda, General Manager, in March and April 2019.

27. On April 10, 2019, Plaintiff was called back to the office by Mr. Frieda and was terminated allegedly for being late at times and for being "off" on locating some of the utilities he was tasked with locating in the field.

28. However, this had never been raised before in any kind of prior discipline or performance reviews.

29. While at the office on April 10, 2019, Plaintiff saw the schedule still had Mr. Long along with two (2) new hires working (Andrew Nolan and Jesse Amador) both of whom were Caucasian.

30. Defendant is responsible for the acts of its employees under a theory of *Respondeat Superior*.

31. Further, the unlawful actions of a supervisor (Mr. Jones) which brought about a tangible employment action such as layoff and termination in this case, entitle Plaintiff to strict liability.

32. Once more, the Defendant failed to take any prompt remedial action to correct the discriminatory and harassing behavior once Plaintiff made it aware of the discrimination and harassment.

## COUNT 1
## VIOLATION OF 42 U.S.C. §1981
## (DISCRIMINATION)

33. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

34. By the conduct described above, Defendant USG intentionally deprived the Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of his contractual employment relationship with USG, in violation of 42 U.S.C. §1981 when it disciplined and fired the Plaintiff.

35. Further, by allowing Caucasian workers with less experience to retain their positions and have scheduled hours after he was told lay-offs were occurring and was himself laid off.

36. Further, to permit the continuing use of derogatory and racist comments by a supervisor whom used to the word "nigger" to describe the plaintiff to others.

37. Further, to permit retaliatory conduct such as discipline, layoff and termination after Plaintiff reported the harassment, racist statements and actions.

38. As a result of USG's actions in violation of Section 1981, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits thereby entitling him to injunctive and equitable monetary relief; has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of USG's actions thereby entitling him to compensatory damages.

39. In its discriminatory actions, as alleged above, USG has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling him to an award of punitive damages.

40. Further, the Defendant intentionally discriminated against Plaintiff due to his race, color and national origin: Hispanic.

41. To remedy the violations of the rights of the Plaintiff secured by Section 1981, Plaintiff requests that the Court award him the relief prayed for below.

## COUNT 2
## VIOLATION OF 42 U.S.C. §1981
## (HOSTILE WORK ENVIRONMENT)

42. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

43. By the conduct described above, Defendant USG subjected the Plaintiff to racist statements and actions such as the use of the word "nigger" as well as unwarranted layoffs and discipline while employed.

44. The Plaintiff did not participate in or welcome the harassment.

45. Defendant's conduct was motivated by the Plaintiff's race/color/national origin.

7

46. The conduct of the Defendant was severe or pervasive since it sanctioned the use of the word "nigger" by a supervisor and layoffs of the Plaintiff when Caucasian workers with less experience enjoyed continuing employment.

47. Plaintiff believed the work environment was hostile or abusive because of the supervisor's statements and Defendants actions.

48. Plaintiff suffered unwarranted layoffs, discipline and termination.

49. As a result of USG's actions in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits thereby entitling him to injunctive and equitable monetary relief.

50. Further, Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of USG's actions or inaction, thereby entitling him to compensatory damages.

51. In its harassment, as more fully alleged above, USG has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling him to an award of punitive damages.

52. Further, the Defendant intentionally created a hostile work environment due to his race, color and national origin: Hispanic.

53. To remedy the violations of the rights of the Plaintiff secured by Section 1981, Plaintiff requests that the Court award him the relief prayed for below.

## COUNT 3
## VIOLATION OF 42 U.S.C. §1981
## (RETALIATION)

54. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

55. Plaintiff reported the use of the word "nigger" to his supervisors and upper level management including reporting that it was a supervisor using the word.

56. Plaintiff reported that he was being laid off due to his race/color/national origin.

57. 42 U.S.C. §1981 prohibits retaliation against one whom engaged in protected activity including reporting racism and racist policies in the workplace.

58. Plaintiff engaged in protected activity (i.e. reporting use of the word "nigger" by a supervisor and layoffs due to his protected status) in March 2019 and April 2019 when he went to supervisors and upper level management with his reports of the same.

59. There was a causal connection between the reporting of the harassment and unwarranted layoffs based on his race/color/national origin and his subsequent termination.

60. If not for Plaintiff's engaging in protected activity the Defendant would not have taken action to deprive him of his job through layoff and termination.

61. As a result of USG's actions in violation of Section 1981, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment

of life because of USG's actions or inaction, thereby entitling him to compensatory damages.

62. In its discriminatory actions, as alleged above, USG has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling him to an award of punitive damages.

63. Further, the Defendant intentionally discriminated, retaliated and created a hostile work environment against Plaintiff as more fully described above, and more specifically below, due to his race, color and national origin: Hispanic.

64. To remedy the violations of the rights of the Plaintiff secured by Section 1981, Plaintiff requests that the Court award him the relief prayed for below.

**COUNT 4**
**VIOLATION OF TITLE VII/PHRA**
**(DISCRIMINATION)**

65. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

66. By the conduct described above, Defendant USG intentionally deprived the Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of his contractual employment relationship with USG, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991 and the PHRA when it disciplined and fired the Plaintiff.

67. Further, by allowing Caucasian workers with less experience to retain their positions and have scheduled hours after he was told lay-offs were occurring and was laid off.

68. Further, to permit the continuing use of derogatory and racist comments by a supervisor whom used to the word "nigger" to describe the plaintiff to others which then led to Plaintiff's discipline thus permitting a hostile work environment to fester and continue while he was employed.

69. Further, to permit retaliatory conduct such as discipline, layoff and termination after Plaintiff reported the harassment and racist statements and actions.

70. As a result of USG's actions in violation of Title VII and the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of USG's actions or inaction, thereby entitling him to compensatory damages.

71. In its discriminatory actions, as alleged above, USG has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling him to an award of punitive damages.

72. Further, the Defendant intentionally discriminated against Plaintiff due to his race, color and national origin: Hispanic.

11

73. To remedy the violations of the rights of the Plaintiff secured by Title VII and the PHRA, Plaintiff requests that the Court award him the relief prayed for below.

## COUNT 5
## VIOLATION OF TITLE VII/PHRA
## (HOSTILE WORK ENVIRONMENT)

74. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

75. By the conduct described above, Defendant USG subjected the Plaintiff to racist statements and actions such as the use of the word "nigger" unwarranted layoffs and discipline while employed.

76. The Plaintiff did not participate in or welcome the harassment.

77. Defendant's conduct was motivated by the Plaintiff's race/color/national origin.

78. The conduct of the Defendant was severe or pervasive since it permitted the use of the word "nigger" by a supervisor and layoffs of the Plaintiff when Caucasian workers with less experience enjoyed continuing employment.

79. Plaintiff believed the work environment was hostile or abusive because of the supervisor's statements and actions.

80. Plaintiff suffered unwarranted layoffs, discipline and termination.

81. As a result of USG's actions in violation of Title VII and the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of

enjoyment of life because of USG's actions or inaction, thereby entitling him to compensatory damages.

82. In its harassment, as alleged above, USG has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling him to an award of punitive damages.

83. Further, the Defendant intentionally created a hostile work environment against Plaintiff as more fully described above, and more specifically below, due to his race, color and national origin: Hispanic.

84. To remedy the violations of the rights of the Plaintiff secured by Title VII and the PHRA, Plaintiff requests that the Court award him the relief prayed for below.

## COUNT 6
## VIOLATION OF TITLE VII/PHRA
## (RETALIATION)

85. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

86. Plaintiff reported the use of the word "nigger" to his supervisors and upper level management including reporting that it was a supervisor using the word.

87. Plaintiff reported that he was being laid off due to his race/color/national origin.

88. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991 and the PHRA prohibits retaliation against one whom engaged in protected activity including reporting racism and racist policies in the workplace.

89. Plaintiff engaged in protected activity (i.e. reporting use of the word "nigger" and layoffs due to his protected status) in March 2019 and April 2019 when he went to supervisors and upper level management with his reports of the same.

90. There was a causal connection between the reporting of the harassment and unwarranted layoffs based on his race/color/national origin and his subsequent termination.

91. If not for Plaintiff's engaging in protected activity the Defendant would not have taken action to deprive him of his job through layoff and would not have fired him.

92. As a result of USG's actions in violation of Title VII and the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of USG's actions or inaction, thereby entitling him to compensatory damages.

93. In its discriminatory actions, as alleged above, USG has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling him to an award of punitive damages.

94. Further, the Defendant intentionally retaliated against Plaintiff as more fully described above due to his race, color and national origin: Hispanic.

14

95. To remedy the violations of the rights of the Plaintiff secured by Title VII and the PHRA, Plaintiff requests that the Court award him the relief prayed for below.

## COUNT 7
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12112(b) (4) AND THE PHRA
## (ASSOCIATION PROVISION)

96. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

97. Plaintiff's son has impairments which substantially limit one or more major life activities: Asthma. Further, Defendant was aware of the plaintiff's son's disabilities and defendant regarded Plaintiff's son as having a disability.

98. Defendant discriminated against Plaintiff when it terminated plaintiff's employment based on its assumptions regarding future absences related to his son's care.

**WHEREFORE**, plaintiff seeks all appropriate relief under and pursuant to the ADA/PHRA as more fully outlined below in its ad damnum clause.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant him relief as specified below.

99. Plaintiff prays that the Court issue injunctive relief pursuant to §1981, Title VII, the ADA and PHRA, enjoining Defendant USG, its officers, agents, employees, and all others acting for or succeeding USG, from engaging in the discriminatory employment practices alleged in this complaint that discriminate against the Plaintiff in violation of Section 1981, Title VII, the ADA and PHRA.

15

100.   The Plaintiff prays that the Court issue an injunction ordering and requiring that Defendant USG formulate, institute, adopt and maintain policies and practices which will provide equal employment opportunities to the Plaintiff which will to the extent practicable remedy the continuing effects of past discrimination against the Plaintiff and restore him to the employment status and position he would have held and enjoyed but for the unlawful discrimination complained of herein.

101.   The Plaintiff further prays that the Court award monetary relief as follows:

a. Order Defendant to pay equitable monetary relief, compensatory and punitive damages to the Plaintiff as are asserted under Section 1981 in an amount to be proven at trial;

b. Order Defendant to pay equitable monetary relief, compensatory and punitive damages within the limits of 42 U.S.C. §1981a (a) (1), or as otherwise statutorily applicable, to the Plaintiff on the claims asserted under Title VII in an amount to be proven at trial; and

c. Order Defendant to pay equitable monetary relief, compensatory and punitive damages to the Plaintiff on the claims he has asserted under the ADA in an amount to be proven at trial.

d. Order Defendant to pay equitable monetary relief, compensatory and punitive damages to the Plaintiff on the claims he has asserted under the PHRA in an amount to be proven at trial.

102. The Plaintiff further prays that the Court award him other costs, expenses and attorneys' fees, payable by Defendant USG by determining that the Plaintiff is a prevailing party on his Causes of Action, and awarding the Plaintiff his reasonable costs, expenses, and attorneys' fees incurred in bringing this action.

103. The Plaintiff prays that the Court order USG to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

104. The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that Defendant USG has fully complied with the injunctions requested herein and has remedied to the greatest extent practicable the discriminatory policies and practices complained of herein, and USG is operating in full compliance with the requirements of §1981, Title VII, ADA and the PHRA with regard to its employment policies and practices.

105. The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated: September 10, 2019          Respectfully Submitted,

                                    DONHAM LAW

                                    By: /s/ Jeremy A. Donham
                                    Jeremy A. Donham, Esquire

17

Attorney for Plaintiff
Supreme Ct. I.D. #206980
P.O. Box 487, Dellslow, WV 26531
(717) 676.7749
(888) 370.5177
E-mail: donhamlaw@comcast.net